BAKER and husband, Plaintiffs and Respondents, v. McDEL CORPORATION, d/b/a Uptown Standard Car Wash & Service Station, Defendant and Respondent: THE AMERICAN OIL COMPANY, Defendant and Third-Party Plaintiff and Appellant: McCARTHY, Third-Party Defendant and Respondent.*

*No. 196. Argued November 3, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 846.)

* Motion for rehearing denied, with costs, on February 1, 1972.

74

For the defendant-appellant American Oil Company there were briefs by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Kurt H. Frauen* of counsel, all of Milwaukee, and oral argument by *Kurt H. Frauen.*

For the defendant-respondent McDel Corporation there was a brief by *deVries, Vlasak & Schallert* of Milwaukee, and oral argument by *Stephen C. deVries.*

For the third-party defendant-respondent James G. McCarthy there was a brief and oral argument by *Lucien J. Piery* of Kenosha.

HANLEY, J. Three issues are raised in this appeal:

(1) Is The American Oil Company entitled to indemnification under the terms of the lease;

(2) Is McDel Corporation, as assignee of the original lease, bound by the indemnity agreement; and

(3) Was the comparison of negligence between The American Oil Company and McDel Corporation grossly disproportionate?

*American Oil's rights as indemnitee.*

This court has consistently upheld the validity of indemnity agreements in general. *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. 2d 194, 120 N. W. 2d 95, 121 N. W. 2d 274; *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6. It is a settled rule in this state that such agreements are to be broadly construed where they deal with the negligence of the indemnitor, but strictly construed where the indemnitee seeks to be indemnified for his own negligence. *Algrem v. Nowlan* (1967), 37 Wis. 2d 70, 77, 154 N. W. 2d 217; *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 55, 168 N. W. 2d 112. Appellant contends that these rules of construction apply only if the contract is found to be ambiguous. We think this is an erroneous view of the law. It is the nature of the indemnity agreement itself, rather than whether or not it is ambiguous, which determines whether the agreement will be strictly or broadly construed. Since this contract calls for indemnification of the lessor for its own acts of negligence, the agreement must be strictly construed.

The accident out of which this action arose occurred when plaintiff tripped over a step near the cashier's window. Appellant urges that it is entitled to indemnity on the basis that the injury arose out of "lessee's use, possession or operation" of the premises. To give such a broad interpretation to the words "use, possession or operation" would violate the rule of strict construction and would make the phrases relating to defects in the premises and condition of equipment mere surplusage. A construction of an agreement which leaves part of the

language useless or surplusage is to be avoided. *North Gate Corp. v. National Food Stores* (1966), 30 Wis. 2d 317, 323, 140 N. W. 2d 744. The only phrase in this agreement which could cover this accident is that relating to "defects in the premises whether apparent or hidden."

The trial court held, however, that appellant was not entitled to indemnity for defects in the premises created after the execution of the lease. In passing on motions after verdict, the trial judge stated:

". . . [B]ecause the condition (step) that caused these injuries was built and installed in 1965 after the agreement and by a strict construction of the indemnity clause in the contract, it cannot be said that the indemnitor agreed to indemnify for 'defects in the premises whether apparent or hidden' that were built and installed after the execution of the lease. Particularly is this true where the indemnitee (Defendant American Oil) was active in the building and installation of said condition (step) after the execution of said agreement.

"A court should not construe an indemnity agreement to cover post-contract defects—created by the indemnitee —unless there is express language in the contract to show a clear intent on the part of the indemnitor to be liable for said post-contract defects created by the indemnitee. To rule otherwise would create a situation of allowing a lessor (indemnitee) to be completely unresponsible for his post-contract acts or omissions—well knowing that he has indemnity protection. This should not be allowed without a clear and concise intent and agreement on the part of the indemnitor, which does not exist in this indemnity clause."

Although the judge correctly stated the law, we think he misinterpreted the intent of the parties relative to post-contract changes in the premises.

Paragraph 5 of the lease prohibits the lessee from erecting any buildings or structures on the premises and from making any permanent alterations or additions to the existing structures without prior approval of the

lessor. The record shows that whenever alterations to the structure or additional facilities were required, American Oil undertook the project itself. Appellant contacted the necessary contractors, approved the designs and paid for the alterations. When improvements were placed on the property, the parties would execute a modification of lease, which increased the rental under the lease to reflect these improvements. It is clear, therefore, that the parties contemplated changes in the premises at the time the lease was executed; and such changes would logically fall within the phrase "defects in the premises whether apparent or hidden." This construction is further supported by the fact that the latest renewal of the lease was executed after McCarthy had requested American Oil to change the location of the cashier's cage. It is clear that he recognized that changes in the premises would occur during the term of the lease.

". . . [T]he rule of strict construction cannot be used as an instrument for defeating the clear intention of the parties. . . ." *Johnson v. Prange-Geussenhainer Co.* (1942), 240 Wis. 363, 375, 2 N. W. 2d 723.

As stated in *Langer v. Stegerwald Lumber Co.* (1951), 259 Wis. 189, 192, 47 N. W. 2d 734:

". . . [T]he purpose of construction should be to ascertain the intention of the parties to the contract as expressed by all of the language rather than to put a trick interpretation or twist upon one word."

We conclude, therefore, that the phrase "defects in the premises whether apparent or hidden" contemplates and was intended to accommodate both present and future defects in the premises. American Oil is entitled to indemnification under the lease.

Respondents urge that the phrase "whether due in whole or in part to negligent acts or omissions of Lessor" should be construed as modifying the phrase relating to "the installation, existence, use, maintenance, condition,

repair, alteration, removal or replacement of any equipment." To support this contention, respondents cite the general rule that qualifying phrases are to be referred to the next preceding antecedent. *Wussow v. State* (1936), 222 Wis. 118, 267 N. W. 56. The construction urged by respondents would have the effect of denying American Oil the right to indemnification for defects in the premises caused by its own negligence, since the language in an indemnity agreement must be clear and unequivocal to entitle the indemnitee to indemnification for his own negligent acts. *Herchelroth v. Mahar, supra,* at page 146. We think, however, that respondent's contention must fail. The clause "whether due in whole or in part to negligent acts or omissions of Lessor" is set off from the preceding clauses by commas. If this clause were meant to be a modification only of the phrase relating to the condition of equipment on the premises rather than all three circumstances under which liability could arise, the comma would be surplusage. We cannot ignore punctuation when interpreting a contract. 17A C. J. S., *Contracts,* p. 159, sec. 306. It is apparent, therefore, that The American Oil Company's indemnity clause covers appellant's own negligence as it relates to (1) lessee's use, possession or operation of the premises; (2) defects in the premises; and (3) the condition of any equipment on the premises.

Finally, respondent contends that the indemnity agreement refers only to common-law negligence, rather than the higher standard of care required by Wisconsin's safeplace statute. We do not agree. The safe-place statute does not create a new cause of action—*Widell v. Holy Trinity Catholic Church* (1963), 19 Wis. 2d 648, 650, 121 N. W. 2d 249—but merely establishes an increased standard of care, violation of which is negligence. *Dahl v. K-Mart* (1970), 46 Wis. 2d 605, 611, 176 N. W. 2d 342. Violation of the safe-place statute would, therefore, be included under this indemnity agreement.

*McDel Corporation as indemnitor.*

The lease was originally executed by American Oil, lessor, and McCarthy, lessee. A provision in the lease prohibited assignment of the lease without written consent of the lessor. McCarthy, however, assigned the lease to McDel Corporation; and McDel accepted the assignment, agreeing to be bound by all the terms of the lease. McDel Corporation now contends that it cannot be bound by an indemnity agreement to which it was not a party.

This contention must fail for two reasons. First, the evidence shows that agents of American Oil knew of the existence of McDel Corporation to begin with. In addition, American Oil accepted checks drawn on McDel's account. American Oil did business directly with McDel Corporation. Such conduct clearly establishes that American Oil waived the contract provision as to assignment. *Galvin v. Lovell* (1950), 257 Wis. 82, 88, 42 N. W. 2d 456. In addition, breach of a contract provision prohibiting assignment can be raised only by the lessor. As stated in 51C C. J. S., *Landlord and Tenant*, pp. 80, 81, sec. 33c:

"Restrictions against assignment or subletting imposed by the terms of the lease are intended for the benefit of the lessor rather than the lessee, and likewise benefit the lessor's assigns; and if neither of these objects to a breach of the restriction no one else may do so. One to whom the term has been assigned in breach of the restriction cannot set up the breach in defense of an action brought against him by the lessor on the lease or in defense of an action brought against him by the lessee on obligations incident to the assignment. . . ."

McDel Corporation seeks a review of that part of the judgment which held that there was a valid assignment of a lease and that the lease provision which prohibited against assignment was waived by American Oil. Upon

review we conclude the trial court was correct in its ruling. The American Oil did waive the contract provision in respect to assignment.

Inasmuch as the part of the judgment appealed from must be reversed, we do not reach the remaining issue of apportionment of negligence between American Oil and McDel Corporation.

*By the Court.*—That part of the judgment appealed from which holds that defendant American Oil Company's claims for indemnification from defendant McDel Corporation and third-party defendant James G. McCarthy be dismissed on their merits, and limiting defendant American Oil Company's right to contribution against McDel Corporation to percentages of negligence found by the jury is reversed. The cause is remanded for entry of a revised judgment in accordance with this opinion.